# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **ERIK CHRISTIAN PINKSTON,** | § | **SA-06-CA-0732 OG (NN)** |
| **Individually, and** | § | |
| **THE TEXAS SECRETARY OF STATE** | § | |
| **ROGER WILLIAMS, in his Official** | § | |
| **Capacity,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   Hon. Orlando Garcia**
**United States District Judge**

### I.  Introduction

This memorandum and recommendation addresses the motion for summary judgment[1]

filed by the plaintiff, the United States of America (the government).  I have jurisdiction to enter

this memorandum and recommendation under 28 U.S.C. § 636(b) and the District Court's order

referring all pretrial matters to me for disposition by order or to aid the District Court by

recommendation where my authority as a Magistrate Judge is statutorily constrained.[2]  After

considering the government's motion and defendant Erik Christian Pinkston's response, I

recommend granting part of the motion and entering summary judgment in favor of the

---

[1]Docket entry # 11; *see also* docket entry # 12 (my order stating that the court will treat the motion as one for summary judgment and inviting the parties to submit additional evidence.)

[2]*See* docket entry # 10.

government on two claims.  I also recommend denying the motion as to a third claim and

dismissing that claim.

## II.  Nature of the Case

On March 28, 2002, a jury found Pinkston guilty in Cause No. SA-01-CR-399-ECP of

committing the following offenses: bank robbery, armed bank robbery, and carrying a firearm in

furtherance of a crime of violence.[3]  The Honorable Edward C. Prado presided over Pinkston's

trial and sentenced Pinkston to 84 months for each offense to run concurrently with Pinkston's

sentence in a related case—SA-02-CR-271-ECP.[4]  The judgments for both of these cases were

filed with the Clerk of the Court for the Western District of Texas, William Putnicki.

On August 8, 2005, Pinkston—then and now a federal inmate—filed a lien with

defendant Texas Secretary of State against property held by Judge Prado and Mr. Putnicki.

Specifically, Pinkston filed a UCC Financing Statement, wherein Pinkston held himself out to be

a secured party holding a security interest in all property owned by Judge Prado and Mr. Putnicki.

The government filed this action, seeking declaratory judgment that the lien is invalid, an

order directing the Secretary of State to expunge the lien document from its records, a prohibition

against any further such filings, money penalties against Pinkston for filing a false claim under

the False Claims Act, and attorney's fees and court costs.[5]  In its complaint, the government

stated that it sued the Secretary of State to provide his offices with the lawful direction and

authority to segregate, remove and expunge the lien against Judge Prado and Mr. Putnicki, as

---

[3]*See* docket entries for SA-01-CR-399-ECP.

[4]*See* SA-01-CR-399-EP, docket entry # 68.

[5]*See* docket entry # 1.

well as the authority to refuse similar filings in the future.  A few months later, Pinkston moved

to dismiss the government's case.[6]  The government responded to Pinkston's motion and then

moved for summary judgment.  The Secretary of State answered and stated that it does not object

to the relief the government seeks.[7]

### The Government's Request for Declaratory Judgment

In its second claim, the government seeks declaratory judgment under the Declaratory

Judgments Act[8] that all liens filed by Pinkston against present, future and former federal judicial

officials or federal officers, including but not limited to Judge Prado and Mr. Putnicki, are null,

void, and of no legal effect.[9]  The government maintains that it is entitled to summary judgment

on this claim because Pinkston filed a fraudulent lien against Judge Prado and Mr. Putnicki.[10]

The government asserts that neither Judge Prado or Mr. Putnicki has had any interaction with

Pinkston in any personal or individual capacity that would give rise to a security interest in their

property.  The government maintains that the exclusive contact between Judge Prado, Mr.

Putnicki and Pinkston stems from Pinkston's role as a criminal defendant in criminal cases

before Judge Prado and that neither Judge Prado nor Mr. Putnicki has granted Pinkston a security

interest in any of their real or personal property.

---

[6]Docket entry # 8.

[7]Docket entry # 5, p. 4.

[8]28 U.S.C. § 2201-02 ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") .

[9]*See* docket entry # 1, p. 6, ¶ 17(a).

[10]*See* docket entry # 11, pp. 2 & 8.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11]

To show that no genuine issue of material fact exists about whether Pinkston's lien is fraudulent, the government presented the UCC Financial Statement that Pinkston filed with the Secretary of State.[12]  That form names Pinkston as the "secured party" and Judge Prado and Mr. Putnicki as Pinkston's "debtors."[13] Section 4 of the form designates the judgments in Cause Nos. SA-01-CR-399-ECP and SA-02-CR-271-ECP, and all of the debtors' other assets, land and personal property as collateral covered by the statement.[14]  Pinkston attached a 12-page document to the financing statement, titled, "Notice by Written Communication/Security Agreement," in which he refers to the use of his name in the judgments as counterfeit versions of his "common-law-copyrighted trade-name/trade-mark."[15]  The document purports to prohibit the use of his "common-law-copyrighted trade-name/trade-mark"[16] and includes a self-executing security agreement[17] purporting to grant Pinkston an interest in the debtors' property if the debtors use his

---

[11]FED. R. CIV. P. 56.

[12]Docket entry # 11, exh. 2.

[13]*See* docket entry #s 11, exh. 2.

[14]*See id.* at p. 1.

[15]*See id.*

[16]*See id.* at p. 3 (marked 1 of 12).

[17]*See id.* at p. 5 (marked 3 of 12).

"common-law-copyrighted trade-name/trade-mark." The document specifically refers to the judgments in Cause Nos. SA-01-CR-399-ECP and SA-02-CR-271-ECP.[18]

Chapter nine of the Texas Business and Commerce Code provides for the filing of a financing statement to perfect a security interest.[19] Section 9.509 permits a person to file an initial financing statement if the debtor authorizes the filing.[20] Section 9.5185 prohibits a person from intentionally or knowingly presenting a financing statement for filing that the person knows is groundless.[21]

Pinkston's financing statement is groundless because it is not predicated on a secured transaction. Neither the financing statement or the attachment refers to any transaction that can reasonably be construed as constituting a secured transaction. Neither document indicates that Judge Prado or Mr. Putnicki authorized the filing of the financing statement. Neither suggests that the purported security interest is based on any relationship other than Pinkston's relationsip to the federal courts as a criminal defendant. Nothing in the documents suggest that Pinkston filed the documents for any purpose other than to harass and cause personal harm and inconvenience to Judge Prado and Mr. Putnicki. Having shown that the lien is groundless, the government is entitled to summary judgment unless Pinkston presents evidence that raises fact question about whether his lien is groundless. Pinkston can do this if he can show that the financing statement is based on a secured transaction between himself and Judge Prado and Mr.

---

[18] *See id.* at p. 10 (marked 8 of 12).

[19] *See* TEX. BUS. & COM. CODE ANN. §§9.501to9.527 (Vernon 2002 & Supp. 2006).

[20] *See* TEX. BUS. & COM. CODE ANN. § 9.509 (Vernon 2002).

[21] *See* TEX. BUS. & COM. CODE ANN. § 9.5185 (Vernon 2002).

5

Putnicki.

Pinkston responded to the government's motion by filing several documents.[22]  The first document is titled, "Letter Rogatory."[23]  The document purports to be a memorandum of law.  It bears Pinkston's signature, followed by the words, "Republic of Texas."  Therein, Pinkston advances a nonsensical argument, asserting that that he "accepted for value the charging papers on September 15, 2006, and returned said charging papers for value to the District Clerk in exchange for post settlement and closure of"[24] this case.  Pinkston stated that he has a superior lien to a lien that the government has on his property.  Pinkston rambled on about how the undersigned accepted Pinkston's pledge "to serve my ministry, to be my servant in supporting my ministry, to help in creating or operating a corporate sole, to assist in opening and office and for work that I have done in the past providing ongoing assistance with resolving all of his commercial affairs."[25]

The second document is titled, "Certificate of Protest."  The document purports to reflect a notary's personal knowledge that Judge Orlando Garcia and U.S. Attorney Johnny Sutton failed to respond to Pinkston's effort to obtain a stipulation that "there were no outstanding unsettled and/or unresolved claims, and no evidence of superior lien or proof that [Pinkston] stipulated to

---

[22]*See* docket entry # 13.

[23]*See id.* at p. 1.

[24]*See id*.

[25]*Id*. at p. 2.

subordinating his superior lien."[26]  The third document is titled, "Schedule A."[27]  The document

seeks settlement of this case.  The fourth document is a copy of the referral order in this case.  It

is over-typed with the following language: " I accept your order for value and consideration in

return for post settlement and closure of the below account and case in the United States

Bankruptcy under Rule 8(c) of the Federal Rules of Civil Procedure. . . . I demand now that the

title/order of the court be released to me forthwith."[28]  It is signed by Pinkston, Republic of

Texas.[29]

      The fifth document is a copy of my order notifying the parties that I will treat the

government's motion for default judgment as a motion for summary judgment.[30]  The order is

bears the same language as the referral order: "I accept your order for value and consideration...."

The sixth document is titled, "Fiat Justitil, Ruat Coelum."[31]  Therein, Pinkston asserts that he is

not a party to, and is not identified in, the charges in this case.  He further asserts—amongst other

undecipherable statements—that he "has not seen or been presented with any material facts or

evidence that there is any authority for the appointed fiduciary, WILLIAM G. PUTNICKI,

maintaining a record reflecting that the dishonor of this request, by an officer of the Court, may

authorize refusal or resignation of the appointment without incurring the ramifications of the

---

[26]*Id*. at p. 6.

[27]*See id*. at p. 7.

[28]*Id*. at p. 8.

[29]*See id*. at p. 9.

[30]*See id*. at p. 10.

[31]*See id*. at p. 12.

dishonor, and believes that none exists."[32]  This nonsensical statement is characteristic of other statements in the document.

The seventh document is a copy of another UCC financing statement.[33]  That statement designates Pinkston as both debtor and secured party, and purports to give Pinkston an interest in his personal and real property.  The eighth document is another UCC financing statement purporting to delete Pinkston's "flesh, bone, vital organs, DNA and RNA materials, bodily fluids, hair, teeth, nails, and other organic material/tissue of any kind amalgamated to constitute the biological living, breathing, bi-pedal organism within which the Secured Party dwells"[34] as collateral in his secured interest.  The statement refers to the criminal judgments in Cause Nos. SA-01-CR-399-ECP and SA-02-CR-271-ECP.[35]

The ninth document is also titled, "Letter Rogatory."[36]  A copy of the sixth and seventh documents are attached to it.  In the document, Pinkston "accepts for value and returns for value the charging papers. . . charging a State-created entity known as ERIK CHRISTIAN PINKSTON a/k/a 'Erik Christian Pinkston, Individually'. . . ."[37]  Pinkston calls on Judge Garcia as the Data Integrity Board to "weigh both claims to title, and issue the ruling as to which confidential

---

[32]*See id*. at p. 18, ¶ 58.

[33]*See id*. at p. 20.

[34]*Id*. at p. 22.

[35]*See id*. at p. 23.

[36]*See id*. at p. 26.

[37]*Id*. at p. 26.

commercial information (hereinafter cci) is sustainable."[38]  Among Pinkston's cci's is the

following: "A record reflecting IF the Prosecutor has demonstrated the capacity to act on behalf

of the Trust, by accepting a charge against the Trust, the Prosecutor can circumvent the duty to

continue to act on the Trust's behalf, via the acceptance, and ignore the condition precedent."[39]

Each cci is as nonsensical as this one.

The tenth document is another certificate of protest.[40]  The document purports to reflect a

notary's personal knowledge that Judge Prado, U.S. Attorney Robert Pittman, and U.S. Attorney

General Alberto Gonzales failed to respond to Pinkston's effort to obtain a stipulation that "there

were no outstanding unsettled and/or unresolved claims, and no evidence of superior lien or

proof that [Pinkston] stipulated to subordinating his superior lien."[41]  The eleventh document is

titled, "Agreement to Accept Collateral in Partial Satisfaction."[42]  The document identifies the

parties to the purported agreement as Pinkston and Pinkston in his capacity as a fictional entity

using his purported "common-law-copyrighted trade-name/trade-mark."  Therein, Pinkston-the-

trade-name accepts Pinkston's "flesh, bone, vital organs, DNA materials, RNA materials, bodily

fluids, hair, teeth, nails, and other live, organic material/tissue of any kind whatsoever which is

amalgamated to constitute the biological living, breathing, bi-pedal organism regarded as

---

[38]*Id*.

[39]*Id*. at p. 27, ¶ 5.

[40]*See id*. at p. 38.

[41]*Id*.

[42]*See id*. at p. 40.

identifying or otherwise referencing"[43]  Among other things, the purported agreement lists the judgments in Cause Nos. SA-01-CR-399-ECP and SA-02-CR-271-ECP as collateral.[44]

The twelfth document is titled, "Simple Social Security Trust."[45]  The document purports to set up a trust between the Social Security Administration (SSA) and Pinkston in which Pinkston acts as his own trustee.  The document states that the SSA "hereby conveys, assigns, transfers, and delivers to [Pinkston] the Social Security Identification card and any such other assets and/or property as now and in the future may be of interest to [Pinkston] as a matter of right. . . ."[46]  The remainder of the document is as nonsensical as the quoted passage.  The document bears Pinkston's signature, but no one else's signature.

The thirteen and final document is a copy of the summons and the government's complaint.[47]  Pinkston printed the following language on the summons:

> I accept your summons for value & consideration in return under Rule 8(c) of the Federal Rules of Civil Procedure.  Please use my exemption as principal for post settlement and closure of [this case] and CUSIP and AUTOTRIS Account Numbers 456714090 as this account is pre-paid and exempt from lien and levy. All public charges as hereby discharged or waived.  I demand that the title/order of the court be released to me forth with.[48]

Pinkston printed the same language on the complaint, substituting "complaint" for "summons."[49]

---

[43]*Id*. at p. 41.

[44]*See id.*

[45]*See id.* at p. 48.

[46]*Id*. at p. 48.

[47]*See id.* at p. 57.

[48]*Id*. at p. 57.

[49]*See id.* at p. 58.

Nothing in any of these documents suggests that Judge Prado or Mr. Putnicki entered into any kind of transaction with Pinkston that can reasonably be construed as constituting a secured transaction.  Nothing suggests that the security interest reflected in the financing statement is based on any relationship other than Pinkston's relationsip to the federal courts as a criminal defendant.  Nothing indicates that Judge Prado or Mr. Putnicki authorized the filing of the financing statement.  Instead, the documents indicate that Pinkston filed the financing statement to harass and cause personal harm and inconvenience to Judge Prado and Mr. Putnicki. Pinkston's evidence does not raise a fact question about whether the financing statement is groundless or about whether his lien is fraudulent.  Having failed to raise a fact question about these questions, the government is entitled to summary judgment on its claim that the lien is fraudulent.  The government, however, is not entitled to all the relief it seeks.

Article III of the Constitution limits federal courts to deciding "cases" and "controversies."[50]  Under this limitation, declaratory judgment is available only when an actual controversy exists.[51]  "An actual controversy exists where 'a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests.'"[52] An actual controversy exists with regard to Judge Prado and Mr. Putnicki because Pinkston has filed a groundless financing statement indicating that all property belonging to Judge Prado and Mr. Putnicki serves as collateral to an indebtedness to Pinkston.  This representation—that all

---

[50]In addition, the Declaratory Judgments Act provides declaratory judgment "[i]n a case of actual controversy within its jurisdiction. . . ."  28 U.S.C. § 2201(a).

[51]*See Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 272 (1941) ("[T]he District Court is without power to grant declaratory relief unless such [an actual] controversy exists.")

[52]*Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citation omitted).

property belonging to Judge Prado and Mr. Putnicki has been pledged as collateral in a secured transaction—represents a substantial controversy of sufficient immediacy and reality because it prevents Judge Prado and Mr. Putnicki from selling their property without first addressing the indebtedness secured by the property.  The filing of this lawsuit demonstrates that the legal interests of Pinkston and Judge Prado and Mr. Putnicki are adverse.  Thus, an actual controversy exists in regard to Judge Prado and Mr. Putnicki.  Because this controversy exists, the government is entitled to declaratory judgment that Pinkston's lien is null, void and of no legal effect.

The government, however, also seeks a declaration that all liens filed by Pinkston against present, future and former federal judicial officers or federal officials, including but not limited to Judge Prado and Mr. Putnicki are null, void, and of no legal effect.  But the government has not shown that an actual controversy exists between Pinkston and other present, future and former federal judicial officers or federal officials.  Consequently, the government is not entitled to a declaratory judgment that all liens filed by Pinkston against present, future and former federal judicial officials or federal officers other than Judge Prado and Mr. Putnicki are null, void, and of no legal effect.

**The Government's Request for an Injunction**

In its first claim, the government seeks an injunction under 18 U.S.C. § 1345, enjoining Pinkston from filing any lien, financing statement document or other record in any jurisdiction relating to any present, future or former federal official or judicial officer, without first obtaining leave from this Court and that if such leave is not obtained, that such lien be declared null and

12

void of any legal effect.[53]  Section 1345 permits the Attorney General to commence a civil action to enjoin a violation of, or to prevent a violation of, the proscription against mail fraud.  To prove a violation of the mail-fraud statute, the government must prove: "(1) the defendant's participation in some scheme or artifice to defraud; (2) the use of the mails 'caused by' defendant or someone associated with the scheme; and (3) the use of the mails for the purpose of executing the scheme."[54]

Here, the summary judgment evidence shows that Pinkston "devised and executed a scheme to defraud for the purpose of obtaining money or property through the filing of [a] false lien[] with the Secretary of State."[55]  This false lien contained false claims of payments due to Pinkston by Judge Prado and Mr. Putnicki as Pinkston's debtors.  Pinkston "claimed that he had 'copyrighted' his name and that these individuals had used his name in fulfillment of their official duties, without first obtaining permission to do so."[56]  This claim forms the basis of Pinkston's lien against Judge Prado and Mr. Putnicki.  As shown above, Pinkston's scheme to file a lien against these government officials was a fraudulent one because no grounds exist for a lien.

In addition to having participated in a scheme to defraud, the attachment to the financing statement shows that Pinkston used the mails for the purpose of executing his scheme.  The

---

[53]*See* docket entry # 1, pp. 5-6 (Count I) & pp. 6-7 (Count II).

[54]*United States v. Davis*, 752 F.2d 963, 970 (5th Cir. 1985).

[55]*United States v. Orrego*, No. 04-CV-008-SJ, 2004 WL 1447954, at *2 (E.D.N.Y. June 22, 2004) (unpublished decision cited only to attribute the quoted language to its originator).

[56]*Id*.

attachment bears the following language: "U.S.P.S. Registered Mail Article Number: RR881050799US." This summary-judgment evidence establishes a violation of the mail fraud statute. Instead of raising a fact question about his use of the mails, Pinkston's summary-judgment evidence shows that Pinkston continues to use the mails to perpetuate his scheme to defraud. For example, the first document asserts that he "sent via United States Postal Service Registered Mail (return receipt requested) Article Numbers RR841159694US; RR841159703US; and RR844115917US—to Johnny Sutton, d/b/a United States Attorney; Rob Portman, d/b/a director of Office of Management and Budget; and Orlando L. Garcia, d/b/a District Judge, respectively—and requesting post settlement and closure"[57] of this case. The third document states in the second paragraph that the "letter rogatory [was] delivered via U.S.P.S. Registered Mail Article #RR841159717US."[58] In accepting service in this case, Pinkston sent the fifth document, marked "Certified Mail (R.R.) Article # 7099 0810 0002 5970 9046."[59] The eleventh document reads as follows: "REGISTERED MAIL ARTICLE Registry #RR841158393US AFTER RECORDING RETURN TO SENDER."[60] Although Pinkston's summary-judgment evidence contains more references to use of the mails, these examples establish Pinkston's use of the mails. Having established a continuing violation of the mail fraud statute, injunctive relief under 18 U. S. C. § 1345 is appropriate to prevent mail fraud.

      Injunctive relief is appropriate because it will remedy the injustice perpetrated by

---

[57]Docket entry # 13, p. 1.

[58]*Id*. at p. 7.

[59]*Id*. at p. 10.

[60]*Id*. at p. 40.

Pinkston against Judge Prado and Mr. Putnicki in filing the frivolous lien.  The particular injunctive relief the government seeks is also appropriate to prevent Pinkston from harassing other federal officials or judicial officers and interfering with their performance of governmental functions.  Because Rule 65 of the Federal Rules of Civil Procedure requires the District Court to narrowly tailor an injunction to remedy the specific action which gives rise to the order, a proviso that Pinkston obtain leave from this Court before filing another lien will prevent Pinkston from filing other fraudulent liens against federal judicial officers and other federal officials, while permitting him to file a legitimate lien—by first obtaining leave of this Court.  The government is entitled to summary judgment on the injunctive relief it seeks.

### The Government's Claim Under the False Claims Act

In its third claim, the government seeks a civil penalty in the amount of $5,000.00 against Pinkston for violating the False Claims Act.[61]  Under this Act,[62] the a person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government. . . a false or fraudulent claim for payment or approval. . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person. . . ."[63]  The government claims it is entitled to summary judgment on its claim because Pinkston filed a fraudulent lien against property held by Judge Prado and Mr. Putnicki representing that these federal officials are indebted to Pinkston.

---

[61]Docket entry # 1, pp. 7-8.

[62]31 U.S.C. § 3729.

[63]31 U.S.C. § 3729(a) .

To be entitled to summary judgment on this claim, the government must present summary-judgment evidence showing: (1) a "claim," as defined by the statute, was presented for payment or approval to the United States; (2) the claim was false or fraudulent; (3) and the claim was made with the requisite scienter.[64]  Under the Act, a claim "includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."[65]

Here, the summary judgment evidence shows that Pinkston filed a fraudulent lien.  At least three courts have construed similar liens as a false claim,[66] but the government here presented no evidence showing that Pinkston has demanded payment based on the lien.  For example, the government did not present any summary-judgment evidence showing that Pinkston submitted an invoice to Judge Prado or Mr. Putnicki for the use of his purported "common-law-copyrighted trade-name/trade-mark."  Without evidence of the demand for payment, the government has not shown that a claim has been made and is therefore not entitled to summary

---

[64]*See United States v. North Am. Const. Corp.*, 173 F. Supp.2d 601, 618. (S.D. Tex. 2001).

[65]31 U.S.C. § 3729(c).

[66]*See Orrego*, No. 04-CV-008-SJ, 2004 WL 1447954, at *4 (finding that the defendant's liens and lien notices were "claims" within the context of the act); *United States v. Anderson*, No. 97-C-821, 1998 WL 704357, *2 (N.D. Ill. Sept. 25, 1998) (determining that liens against former U.S. Attorneys, defense attorney, federal judge, employees of probation office, DEA agents, FBI agents and U.S. Senators, and lien notices, are claims and stating that a claim against an individual in his or her official capacity constitutes a claim against the government entity itself).

judgment on the claim.

Accordingly, I recommend that the Court deny the government's claim for summary judgment on the False Claims Act claim and grant Pinkston's request that the False Claims Act claim be dismissed for failing to state a claim upon which relief can be granted.  Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[67] is appropriate if the government can prove no set of facts in support of its claim that would entitle it to relief.[68] Dismissal of the False Claims Act claim is appropriate because the complaint does not allege that Pinkston presented a claim for payment under his false lien.  I also recommend tht the Court dismiss the claim without prejudice to allow the government to refile its claim in the event Pinkston attempts to collect on his assertion that he is entitled to payment for the use of his "common-law-copyrighted trade-name/trade-mark."

### The Government's Request for Costs

The government also seeks its costs for bringing this action.  Although the False Claims Act provides for the recovery of the government's costs to recover its damages caused by a false claim,[69] the summary-judgment evidence does not entitle the government to summary judgment. Consequently, the government is not entitled to recover its costs.

### Recommendations

Because the government's summary-judgment evidence shows that Pinkston filed a fraudulent lien against Judge Prado and Mr. Putnicki, the government is entitled to declaratory

---

[67]FED. R. CIV. P. 12(b)(6).

[68]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[69]*See* 31 U.S.C. § 3729 (a).

judgment that Pinkston's lien against Judge Prado and Mr. Putnicki is null, void and of no legal effect.  The government has not shown that an actual controversy exists between Pinkston and other present, future and former federal judicial officers or federal officials.  Consequently, the government is not entitled to a declaratory judgment that all liens filed by Pinkston against present, future and former federal judicial officials or federal officers other than Judge Prado and Mr. Putnicki are null, void, and of no legal effect.

The government's summary-judgment evidence shows that Pinkston participated in a scheme to defraud for the purpose of obtaining money or property through the filing of a false lien.  As a result, the government is entitled to injunctive relief.  The government's evidence, however, does not show that Pinkston knowingly presented, or caused to be presented, a false or fraudulent claim for payment to an officer or employee of the United States Government.  Thus, the government is not entitled to summary judgment on its False-Claims-Act claim.

As a complete disposition of this case, I recommend the following actions: (1) GRANT the government's motion for summary judgment (docket entry # 11) on the government's request for declaratory judgment and for injunctive relief, and DENY the motion with respect to the government's False Claims Act claim and the government's request for costs; (2) GRANT Pinkston's motion to dismiss (docket entry # 8) the False Claims Act claim for failure to syate a claim and DENY the motion in all other respects as moot; (3) ENTER a summary judgment order specifying the following relief: (a) entering summary judgment in favor of the government on its request for declaratory judgment and injunctive relief; (b) dismissing the government's False-Claims-Act claim without prejudice; (c) denying the government's request for costs; (d) declaring that the lien that Pinkston filed against Judge Prado and Mr. Putnicki is null, void and

of no legal effect; (e) enjoining Pinkston from filing any lien, financing statement document or other record in any jurisdiction relating to any present, future or former federal official or judicial officer, without first obtaining leave from this Court and that if such leave is not obtained, that such lien be declared null and void of any legal effect; (f) directing the Secretary of State to immediately remove the lien placed on property belonging to Judge Prado and Mr. Putnicki by Pinkston's lien; and (g) authorizing the Secretary of State to refuse to accept a future filing from Pinkston naming a federal judicial officer or federal official as a debtor unless Pinkston shows that this Court authorized such filing.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[70]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in

---

[70]28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

this report shall bar the party from a *de novo* determination by the District Court.[71]  Additionally,

failure to file timely written objections to the proposed findings, conclusions and

recommendations contained in this Memorandum and Recommendation shall bar the aggrieved

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the District Court.[72]

       **SIGNED** on May 14, 2007.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[71]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[72]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

20